UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SONIA DOTSON,

                          Plaintiff,

v.                                                                    5:11-CV-620
                                                                      (NAM/ATB)
CITY OF SYRACUSE; GARY MIGUEL, in his
individual capacity as former Chief of Police of the
City of Syracuse; MICHAEL HEENAN, in his
individual capacity as former First Deputy Chief of
Police of the City of Syracuse; DAVID BARRETTE,
in his individual and official capacity as First
Deputy Chief of Police of the City of Syracuse;
JUDY CULETON, in her individual and official
capacity as the Commanding Officer of the Human
Resources Division of the City of Syracuse Police
Department; JOSEPH SWEENY, in his individual
and official capacity as a Captain with the City of
Syracuse Police Department; NICHOLAS KLEIST,
JR., in his individual and official capacity as a
Lieutenant with the City of Syracuse Police
Department; RICHARD TRUDELL, in his
individual and official capacity as a Captain with
the City of Syracuse Police Department; and JOHN
DOE(S) and/or JANE DOE(S), in their individual
and official capacities,

                          Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

Bosman Law Firm, L.L.C.                               A.J. Bosman, Esq.
6599 Martin Street
Rome, New York 13440
*For Plaintiff*

Mary Anne Doherty, Esq.                               Shannon T. O'Connor, Esq.
Corporation Counsel of the City of Syracuse          Assistant Corporation Counsel
300 City Hall
Syracuse, New York 13202

*For Defendants*

**Hon. Norman A. Mordue, U.S. District Judge**

<strong>MEMORANDUM DECISION AND ORDER</strong>

# I.   INTRODUCTION

The amended complaint (Dkt. No. 18) asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. §§ 1981 and 1983, the First and Fourteenth Amendments to the United States Constitution, the New York State Human Rights Law ("NYSHRL"), and the Constitution of the State of New York.   The claims stem from plaintiff Sonia Dotson's employment in the City of Syracuse Police Department ("SPD").   Defendants move (Dkt. No. 25) to dismiss the amended complaint on the following grounds: (1) res judicata and collateral estoppel; (2) judicial estoppel; and (3) failure to state a claim.   Plaintiff opposes defendants' motion and cross-moves (Dkt. No. 28) to file a second amended complaint. Defendants oppose (Dkt. No. 31) plaintiff's cross-motion.

# II.   BACKGROUND

This is the second action plaintiff has filed in this Court concerning her employment as a Community Service Officer ("CSO") in the City of Syracuse Police Department ("SPD").   *See Dotson v. City of Syracuse; The City of Syracuse Police Department; Former Chief of Police Dennis Duval; Sgt. Timothy Gay; Mark McCardle; Patrick Harrington; Michael Rathbun*, 5:04-CV- 1388 (NAM/ATB) ("Dotson I").   In Dotson I, plaintiff, who is Hispanic, alleged that the City of Syracuse and the individual defendants discriminated against her based on her gender and national origin by assigning her "road duty" and treating her more harshly than her white male colleagues for minor infractions, in violation of Title VII, the Equal Protection Clause of

the Fourteenth Amendment, and NYSHRL.

Plaintiff also alleged that defendants subjected her to a hostile work environment, in violation of Title VII and the NYSHRL.  Specifically, plaintiff alleged that defendants watched pornographic movies, looked at pornographic magazines, made sexual and derogatory comments about women, treated women poorly and subjected women to excessive scrutiny.

Plaintiff alleged that defendants retaliated against her in violation of Title VII, § 1981, and the First Amendment for complaining about gender and national origin discrimination as well as for complaining about pornography in the workplace.  Specifically, plaintiff alleged that defendants retaliated against her by: subjecting her to heightened criticism of her performance, reprimanding and disciplining her; eavesdropping on her telephone conversations; assigning her road duty; and instigating a criminal prosecution of her regarding an incident that occurred October 2006 at JC Penney and reporting it to internal affairs, in violation of Title VII, 42 U.S.C. § 1981, and the NYSHRL.

Plaintiff alleged that the City of Syracuse had an official policy or custom of discrimination and retaliation and that Dennis Duval, the former SPD Chief of Police was liable because he had "final policymaking authority".  Based on those allegations, plaintiff asserted that the City of Syracuse and former chief of police could be held liable under §§ 1981 and 1983 for the discrimination and retaliation she suffered.

At the summary judgment stage, the Court denied summary judgment on the claim which alleged that the City of Syracuse retaliated against her for complaining about pornography in the workplace by requisitioning and listening to recordings of her telephone conversations, in violation of Title VII.  The Court also denied summary judgment on the claim that defendants

Gay and McCardle retaliated against her for complaining about pornography in the workplace by requisitioning and listening to recordings of her telephone conversations, in violation of the NYSHRL and § 1981.  The Court granted summary judgment to defendants on all other claims. *Dotson v. City of Syracuse*, No. 5:04-CV-1388, 2009 WL 2176127 (N.D.N.Y. Jul. 21, 2009).

On February 12, 2010, after a five-day trial, the jury found in plaintiff's favor on the retaliation claim.  The jury awarded plaintiff $175,000.00 in compensatory damages against the City of Syracuse; $125,000.00 in compensatory damages against defendant Timothy Gay; and $150,000.00 in compensatory damages against Mark McArdle.

Post trial, defendants filed a motion for remittitur.  The Court granted defendants' motion and advised plaintiff that unless she accepted an award of compensatory damages in the amount of $50,000 it would hold a new trial on the issue of compensatory damages.  *Dotson v. City of Syracuse*, No. 5:04-CV-1388, 2011 WL 817499 (N.D.N.Y. Mar. 2, 2011).  Plaintiff objected to the proposed remittitur and elected to "proceed on a new trial on damages."

The second trial began on November 15, 2011.  On November 16, 2011, the jury awarded plaintiff $225,000 in compensatory damages.  Defendants filed post trial motions and again requested remittitur.  The Court denied those motions on the ground that they were untimely. *Dotson v. City of Syracuse*, No. 5:04-CV-1388, 2012 WL 4491095 (N.D.N.Y. Sep. 28, 2012). Dotson I is pending before the Second Circuit.

On or about March 20, 2011, plaintiff filed the instant action in the Supreme Court of the State of New York, County of Onondaga.  On or about May 20, 2011, plaintiff served defendants with a summons and complaint.  On June 3, 2011, defendants removed the action pursuant to 28 U.S.C. §§ 1331 and 1441, on the ground that this Court has original jurisdiction because the

4

claims arise under Title VII and the United States Constitution.  On April 20, 2012, plaintiff filed an amended complaint adding defendant Trudell.

## III.    AMENDED COMPLAINT

### A.    Facts

Plaintiff asserts that three events, all of which occurred after the filing of Dotson I, form the basis for the instant action.

#### 1.    November 2008 - Suspension for Insubordination

The amended complaint (Dkt. No. 18) alleges the following:[1]

44. Plaintiff's direct supervisor was Sergeant Naylor. Sergeant Kleist shared an office with Sergeant Naylor. Sergeant Kleist was the officer in charge of parking enforcement and supervised the parking checkers. Defendant Sweeny was the commanding officer in Plaintiff's office, and together with Naylor was responsible for enforcing employee parking regulations around the Public Safety Building.

45. On or about November 19, 2008, Plaintiff complained to her direct supervisor, Sergeant Patrick Naylor that employees of the Department were being allowed to park illegally around the Public Safety Building and that it was unfair to her and other employees who paid for costly parking a distance away from the building in accordance with Department policy.

45. Sergeant Naylor became dismissive and stated he would not speak to Plaintiff about it. Defendant Kleist then interjected himself into the conversation, berated and began to yell at Plaintiff, telling her they "don't want to hear it anymore" and she should go sit down and to go back to her desk. Plaintiff objected to his treatment of her and his interference, then returned to her desk and sat down. Defendant Kleist and Naylor then had a meeting and later caused disciplinary charges of insubordination to be issued against Plaintiff. White male employees are not subjected to such charges for such complaints to or exchanges with superiors.

47. Female and minority officers are not treated as valued for their professional skill in the Department and their complaints have traditionally been ignored or not taken seriously. Such attitude promotes an environment that gives

---

[1]The Court sets forth the amended complaint as it appears in the record, without noting or correcting errors.

license to white male employees like Defendant Kleist to engage in the demeaning and wrongful acts against Plaintiff with impunity. This disparate treatment subjects Plaintiff to unequal terms, conditions and privileges of employment due to her sex and national origin.

48. On or about November 21, 2008, Plaintiff was informed by Defendant Sweeny that she had been written up for "insubordination" and that she was facing a five day suspension without pay.

49. On November 24, 2008, Plaintiff and her Union representatives met with Defendant Culeton ostensibly to defend against the charges. Defendant Culeton refused to listen to Plaintiff and told her that the suspension would stand.

50. Defendant Culeton handed Plaintiff a suspension notice and discipline report. The discipline was initiated by Defendant Kleist on November 19, 2008; Defendant Sweeny signed the discipline report the same day and recommended that Plaintiff be terminated from employment. On November 20, 2008, Defendant Barrette also signed the discipline report and recommended that Plaintiff be suspended for five days without pay. On November 21, 2008, Defendant Heenan signed the discipline report and also recommended a five day suspension. That day, Defendant Miguel signed the discipline report and approved a five day suspension without pay.

51. Plaintiff was not insubordinate and therefore the basis of her discipline was fraudulent and a pretext for discrimination and/or retaliation for Plaintiff's complaints and her association with Officer Calverase. In addition to being baseless, Defendants routinely tolerate aggressive behavior and course language by white male employees. Further, the aforementioned discipline was an unduly harsh penalty as other employees who engage in serious offenses are neither disciplined at all or given lesser penalty. Upon information and belief, white male officers who engage in repeated acts of misconduct, including, domestic violence; DWI; sexual misconduct; viewing of pornography on duty; menacing; reckless endangerment and/or threatened self-harm, were not disciplined at all or were not subjected to nor recommended for as harsh a penalty as Plaintiff.

52. Upon information and belief, Defendants' aforementioned conduct and discipline was also motivated in part by an intent to retaliate against her for having a personal and professional relationship with Officer Calverase who also complained of a hostile work environment. Defendants' actions subjected Plaintiff to discord in her peer relationship. Ranking and superior officers have a history in the SPD of creating conflict amongst female and minority officers. Female and minority officers, especially those who complain of discriminatory treatment, have been called derogatory names such as "bitch", "broad", "fuckin broad", "slut", "whore", "cunt", "941" (police lingo for an emotionally disturbed person), and "941 bitch" by officers

(on-duty) and have had their work performance denigrated and interfered with. For example, Defendant Sweeny has prohibited female police officers from working together on patrol, stating "The broads can't work together . . . They'll just be calling for back up all the time . . ."

53. Defendant Kleist in the presence of Plaintiff, mocked a mayoral candidate who called for the hiring of more minority police officers in the City of Syracuse, stating "How are you going to hire them when they are all drug dealers？!". Despite Plaintiff's complaint to Captain Galvin of Internal Affairs regarding said statement, no investigation was done or corrective action taken.

## 2.    **January 2009 - Appeal of Dismissal of Violation Offense**

54. On or about January 14, 2009, Plaintiff and her husband moved to amend their Complaint in the case regarding another matter: Dotson v. J.C. Penney, et al., Onondaga County Supreme Court, Index No. 2007-7035 to add claims of retaliation and discrimination against Syracuse and Defendant Miguel for their role in the arrest and prosecution of Plaintiff in 2006 in Syracuse City Court.

55. The referenced charges were subsequently dismissed by Syracuse City Court in November, 2007, a confirming written decision/order issued January 10, 2008, and a notice of appeal was filed on or about January 17, 2008, but on information and belief, no further steps were taken to perfect said appeal.

56. Plaintiff's motion and proposed amended complaint alleged that Defendants City of Syracuse and Miguel discriminated against her and her husband on the basis of national origin and race.

57. Upon information and belief, upon learning of the proposed amendment, Defendant Miguel had approached the Onondaga County District Attorney's Office and complained to them that they had not successfully prosecuted Plaintiff or appealed the dismissal of Plaintiff's violation offense.

58. Immediately thereafter, the Onondaga County District Attorney's Office suddenly made steps in an attempt to perfect an appeal of the dismissal of Plaintiff Sonia Dotson's violation offense.

## 3.    **February 2012 - Suspension for Insubordination**

59. Plaintiff came under the supervision of Defendant Trudell on or about February or March 2010. Defendant Trudell is openly hostile to Plaintiff and has given Plaintiff cold and icy stares and ordinarily will not speak with Plaintiff or even acknowledge her presence. His adverse treatment of Plaintiff is completely without provocation as she has always treated her superiors with the upmost respect.

60. On February 13, 2012, Plaintiff complained to Defendant Trudell about the disrespectful manner in which he speaks to her in the presence of other superiors and co-workers. Instead of acknowledging Plaintiff's complaint, Defendant Trudell falsely accused Plaintiff of "texting" during a staff meeting held earlier that day.

61. On or about February 15, 2012, Plaintiff was summoned to Defendant Culeton's office for a "pre-disciplinary hearing". While Plaintiff was provided a letter from Defendant Culeton which identified the rules and regulations that she allegedly violated, Plaintiff still to this date has not been advised of what she allegedly did wrong. Despite demand, Defendants have refused to disclose the basis of the charges. Plaintiff was suspended for five days without pay by Defendant Fowler. Upon information and belief, the discipline was prompted by Defendants Culeton and Trudell.

62. Defendants were not motivated by legitimate, non-discriminatory reasons in light of the absence of any basis for the charges and their indifference to allegations of serious misconduct of white male employees and those who have not opposed discrimination.

63. Further, the instant discipline is an extension of the retaliatory treatment Plaintiff has consistently received since first complaining of pornography in the workplace at the Syracuse Police Department. In point of fact, in March, 2010, by finding and verdict of a jury, this Court determined that the Syracuse Police Department has a policy or custom of retaliating against employees who complain of discrimination.

## B.      Causes of Action

The first, second, fifth and eighth causes of action allege that defendants discriminated against plaintiff by subjecting her to disparate treatment because of her gender and national origin, in violation of Title VII, NYSHRL, the Equal Protection Clause of the Fourteenth Amendment, and § 1981.

The third, fourth, and ninth causes of action allege that defendants retaliated against plaintiff for opposing discrimination, in violation of Title VII, the NYSHRL, and § 1981.

The fifth cause of action also alleges that defendant City of Syracuse is liable for violating plaintiff's Fourteenth Amendment rights because it maintained an unlawful custom,

8

practice or policy and failed to adequately train its employees regarding "the rights of employees to be free from hostile work environment, discrimination, and/or retaliation."  The seventh cause of action alleges that defendants Miguel, Heenan and Barette were policy making officials and that defendant City of Syracuse's "discriminatory hiring, discipline, lack of promotion, retaliation, and disparate treatment of women and minority employees of the City of Syracuse Police Department is so pervasive and widespread that it has the effect of a custom, practice and/or policy, [of] harming the Plaintiff."

The sixth cause of action alleges that defendants violated plaintiff's First Amendment rights by retaliating against her when she exercised her "rights to free speech and association".

The tenth cause of action alleges that defendants have violated Article I, Sections 8 (freedom of speech) and 11 (equal protection) of the New York State Constitution.

## IV.    DISCUSSION

### A.    Standard - Motion to Dismiss - Fed. R. Civ. P. 12(c)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) or a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c),[2] "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar*

---

[2]The standard for analyzing a motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings is identical to the standard for a motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

*Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell*, 550 U.S. at 555).  The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiffs' favor.  *See ATSI*, 493 F.3d at 98.

### B.    Res Judicata

"The preclusive effect of a federal-court judgment is determined by federal common law" and "is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.' " *Taylor v. Sturgell*, 553 U.S. 880, 891-92 (2008).  Res judicata "bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *EDP Med. Computer Sys.,Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotation marks and alterations omitted).

The application of res judicata is appropriate even when the prior "judgment may have been wrong or rested on a legal principle subsequently changed," *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981).  "While claim preclusion bars relitigation of the events underlying a previous judgment, it does not preclude litigation of events arising after the filing of the complaint that formed the basis of the first lawsuit.... The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later arising claims." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000).

Generally, claim preclusion is raised as an affirmative defense.  Fed. R. Civ. P. 8(c). Dismissal under Fed. R. Civ. P. 12(c), however, "is appropriate when a defendant raises claim preclusion ... and it is clear from the face of the complaint, and matters of which the court may

take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (2d Cir. 2000).

### 1.    Claim Preclusion

The parties do not seriously dispute that there was a final judgment on the merits in Dotson I as the claims were disposed of at the summary judgment stage or by jury trial.  Dotson I, as here, involved the City of Syracuse and the chief of police.  The legal theories plaintiff advanced in Dotson I are the same legal theories she advances in this case: discrimination, disparate treatment and  retaliation, in violation of Title VII, 42 U.S.C. § 1981, the Equal Protection Clause of the Fourteenth Amendment, the First Amendment, the NYSHRL, and New York State constitution.  The claims in this case, however, center on events that occurred after plaintiff commenced Dotson I: a five day suspension in November 2008, an attempt to perfect an appeal, in January 2009, of a criminal proceeding against plaintiff; and a five day suspension in February 2012.  As discussed below, because the facts of these events were not before the Court in Dotson I, the claims are not precluded.  *See Woods v. Dunlop Tire Corp*., 972 F.2d 36, 39 (2d Cir. 1992) ("It is this identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [the plaintiff] chose to frame her complaint.").

### a.    Suspensions

In this case, plaintiff's discrimination claims are premised on her allegation that defendants disciplined her because of her gender and national origin but did not discipline similarly situated white male employees.  The factual predicates for these claims are: the allegedly "fraudulent" November 2008 disciplinary report which led to plaintiff's five-day suspension; and the February 2012 five-day suspension based on charges defendants allegedly

"refused to disclose".  Plaintiff also advances retaliation claims from these facts.  Specifically, plaintiff asserts that: defendants imposed the November 2008 suspension in retaliation for her friendship with Officer Calverase, a female co-worker who had recently filed a complaint of discrimination with the EEOC; and that the February 2012 suspension "is an extension of the retaliatory treatment Plaintiff has consistently received since first complaining of pornography in the workplace".

In Dotson I plaintiff also advanced discrimination and retaliation claims.  There, however, the allegedly discriminatory and retaliatory acts took place between 2002 and 2007, and concerned: pornography in the work place; written reprimands; eavesdropping on plaintiff's telephone conversations; road duty assignments; plaintiff's complaints to the SPD EEO officer; and SPD's alleged involvement in the Onondaga District Attorney's Office's decision to arrest plaintiff for an incident at JC Penney that occurred in October 2006.  Here, the challenged disciplinary actions occurred in November 2008 and February 2012 and were not addressed in Dotson I.  Although the claims in both cases arise from the same "nucleus of operative facts", it is only to the extent that they stem from plaintiff's employment at SPD; they are separate disciplinary incidents that occurred after the commencement of Dotson I and are factually distinct.  *See Berlitz Sch. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of res judicata.").  Thus, plaintiff is not precluded from litigating these claims.

### b.      Appeal of Criminal Action

According to the amended complaint, on January 14, 2009, plaintiff and her husband

moved to amend their complaint in Dotson v. JC Penney, which was pending in state court "to add claims of retaliation and discrimination against Syracuse and Defendant Miguel for their role in the arrest and prosecution of Plaintiff in 2006 in Syracuse City Court."  Plaintiff alleges that in retaliation for her filing of this motion, defendant Miguel "approached the Onondaga County District Attorney's Office and complained to them that they had not successfully prosecuted Plaintiff or appealed the dismissal of Plaintiff's violation offense."  "Immediately thereafter, the . . . District Attorney's Office suddenly made steps in an attempt to perfect an appeal . . . which required Plaintiff to retain counsel and respond, costing Plaintiff counsel fees and expenses."

In Dotson I, the Court only reviewed whether the defendants had a hand in the initiation, in 2007, of criminal proceedings against plaintiff.  There were no facts before the Court concerning defendants' alleged attempt, in January 2009, to perfect the appeal of the dismissal of the criminal proceedings against plaintiff.  Thus, plaintiff is not precluded from litigating this claim.

c.    **Municipal Liability**

Plaintiff brings the fifth and seventh causes of action pursuant to § 1983 and alleges that defendant City of Syracuse is liable for violating plaintiff's rights because it maintained an unlawful custom, practice or policy and failed to adequately train its employees regarding "the rights of employees to be free from hostile work environment, discrimination, and/or retaliation." The seventh cause of action contains similar allegations against alleged policymakers.

In Dotson I, the Court found no issue of material fact and granted summary judgment to the City of Syracuse on this claim, as well as her claim pursuant to § 1981.  Here, the amended complaint advances no new facts.  In her opposition to defendants' argument that this claim is

13

barred by res judicata, plaintiff asserts that in Dotson I "the Court made a [sic] clearly erroneous fact finding" when it granted summary judgment to the City of Syracuse on this claim. Res judicata, however "protects wrong decisions as fully as right ones." *Friarton Estates Corp. v. City of N.Y.*, 681 F.2d 150, 158 (2d Cir. 1982). Thus, this claim is precluded.

### d.    First Amendment

In this case, plaintiff alleges that she "was not insubordinate and therefore the basis of her discipline [and suspension in November 2008] was fraudulent and a pretext for discrimination and/or retaliation for Plaintiff's complaints and her association with Officer [Kimberly] Calverase." According to the amended complaint, in July 2008, Calverase filed a charge of discrimination with the EEOC and served a notice of claim against the Syracuse Police Department and members of the Syracuse Police Department. In Dotson I, plaintiff claimed that the statements she made in her EEOC complaint constituted protected speech and that defendants retaliated against her by subjecting her to heightened criticism of her performance, eavesdropping on her telephone conversations, assigning her disproportionate amounts of road duty, and arresting her for the incident at JC Penney. Since the factual predicates upon which plaintiff's First Amendment claims are based are different, the Court finds that plaintiff's present First Amendment claim is not duplicative. Thus, res judicata does not apply.

### 2.    Issue Preclusion

Defendants claim that the Court should preclude the following issues: "pornography being viewed at work; Defendants' alleged involvement in her criminal prosecution; Plaintiff's

14

lack of access to promotional opportunities . . . and Plaintiff's damages."[3]

Issue preclusion "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999) (internal quotation marks omitted). "These four factors are required but not sufficient. In addition, a court must satisfy itself that application of the doctrine is fair." *Bear, Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005).

Plaintiff has stated in her motion papers that her references to events that occurred prior to 2008, are only to provide background and that she does not intend to pursue these issues in this action. While that may prove to be true on the issues of promotional opportunities and damages, the allegations in the amended complaint indicate that plaintiff intends to press the issues of the criminal prosecution and pornography in this case.

As discussed, plaintiff may proceed with her claim that in January 2009, defendant Miguel was involved in pursuing an appeal of the criminal action against plaintiff, in retaliation for her motion to add discrimination and retaliation claims to her state court action. In Dotson I, plaintiff claimed that defendants initiated the criminal prosecution against her in retaliation for her complaints that the SPD subjected her to unlawful discrimination. Finding it was undisputed that "all decisions including the decision to issue an arrest warrant rather than an appearance

---

[3]Defendant also asserts that any issue regarding "Defendant's disciplining Plaintiff in retaliation for her complaints against discrimination" should be precluded. As already discussed, plaintiff may proceed with her disparate treatment, discrimination, and retaliation claims regarding the November 2008, January 2008, and February 2012 events.

ticket were made by the District Attorney's office not by the SPD" the Court granted defendants summary judgment on this claim.  Thus, the issue of the initiation of the criminal proceedings against plaintiff was actually litigated and decided.  Both parties had a full and fair opportunity to conduct discovery and address this issue, and it was necessary to support a final judgment on the merits of her retaliation claim.  Accordingly, the Court concludes fairness requires that preclusive effect be given to the issue of the initiation of criminal proceedings against plaintiff.  Preclusion will not impair plaintiff's ability to move forward on her retaliatory appeal claim, it only narrows the issue.

On the issue of pornography, the amended complaint asserts that the February 2012 suspension was "an extension of the retaliatory treatment Plaintiff has consistently received since first complaining of pornography in the workplace at the Syracuse Police Department."  Thus, plaintiff squarely raised the pornography issue, again.  The pornography in the workplace issue here is identical to the pornography issue in Dotson I.  Further, it was litigated exhaustively in Dotson I.  Plaintiff and defendants had a full and fair opportunity to litigate this issue at the summary judgment stage and before a jury.  Resolution of this issue was necessary to support a final and valid judgment on the merits of plaintiff's retaliation claim.  The Court is satisfied, given that the parties litigated this issue through summary judgment and trial, that preclusion of this issue is fair in this instance.

Accordingly, defendants' motion for issue preclusion is granted with respect to the issues of the initiation of criminal prosecution and pornography in the workplace.  Regarding the issues of promotional opportunities, defendants' motion is denied without prejudice to renewal in the event that these issues arise in this case.

16

### C.      Judicial Estoppel

Defendants assert that plaintiff "is barred by judicial estoppel from suing again on the exact same damages that she previously obtained a judgment for, by taking a different factual position in this case."  Defendants point out that in Dotson I, plaintiff took the position that defendants caused her emotional distress when they requisitioned and listened to recordings of her telephone conversations in retaliation for her complaints about pornography.  Now, defendants assert, plaintiff has taken the position that, in fact, her emotional distress was caused by defendants' recent discriminatory and retaliatory actions.

For the doctrine of judicial estoppel to apply, "a party's later position must be clearly inconsistent with its earlier position."  *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal quotation marks omitted).  More specifically, defendants must show that (1) plaintiffs adopted a factual position "clearly inconsistent with [their] earlier position"; (2) the prior position was "adopted in some way by the court in the earlier proceeding"; and (3) plaintiffs would "derive an unfair advantage" against defendants in asserting the inconsistent statements. *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (internal quotation marks omitted); *see also New Hampshire*, 532 U.S. at 749 (noting that party may not  maintain "contrary position" to position taken in prior proceeding if change prejudices party who "acquiesced in the [former] position").  The application of judicial estoppel is limited to instances where "the risk of inconsistent results with its impact on judicial integrity is certain." *DeRosa*, 595 F.3d at 103 (internal quotation marks omitted).

At the heart of defendants' argument for the application of judicial estoppel is their concern that plaintiff will recover twice for one injury.  Defendants assert that in this case

17

plaintiff alleges that they have caused her emotional distress, which is the same allegation she made in Dotson I, and for which she received a jury award of $225,000 in compensatory damages.  Indeed, in both actions, plaintiff named the City of Syracuse and the chief of police as defendants, advanced the same legal theories, and alleged that the defendants caused her emotional distress.  Thus, defendants' concern is reasonable.  Defendants have not, however, satisfied their burden of establishing that judicial estoppel is warranted.  Without more specificity the Court has no basis on which to find that plaintiff's position on damages is "clearly inconsistent" with her position in Dotson I.  Defendants' motion for the application of judicial estoppel is therefore denied without prejudice.

### D.    Discrimination Claims

The first, second, fifth and eighth causes of action allege that defendants subjected her to disparate treatment because of her gender and national origin, in violation of Title VII, NYSHRL, the Equal Protection Clause of the Fourteenth Amendment, and § 1981.

Title VII makes it unlawful for an employer, inter alia: "to discriminate against any individual because of his race ... in admission to, or employment in, any program established to provide apprenticeship or other training." 42 U.S.C. § 2000e-2(d). To prevail on a Title VII disparate treatment claim, a plaintiff must ultimately prove that "(1) [s]he is a member of a protected class; (2) [s]he is competent to perform the job or is performing h[er] duties satisfactorily; (3) [s]he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on h[er] membership in the protected class." *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216 (2d Cir. 2005).  At the pleading stage, a plaintiff need not establish a prima facie case satisfying the

required elements of disparate treatment, but only sufficient facts to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir.2008).[4]

In the amended complaint, plaintiff, who is Hispanic, alleges that: she was similarly situated to her white male co-workers; that she was suspended for five days in November 2008 and again in February 2012; that she was disciplined without cause while her white male co-workers who "engage[d] in repeated acts of misconduct, including, domestic violence; DWI; sexual misconduct; viewing of pornography on duty; menacing; reckless endangerment and/or threatened self-harm, were not disciplined at all or were not subjected to nor recommended for as harsh a penalty as Plaintiff"; and that her gender and national origin was the motivation for defendants' disparate treatment. The Court's function at this stage is not to evaluate or weigh the evidence, but to view the amended complaint in the light most favorable to the plaintiff. *See Cohn v. New Paltz Cent. Sch. Dist.*, 363 F.Supp.2d 421, 439 (N.D.N.Y. 2005) (holding that the allegations in the complaint, by themselves, appear to be sufficient to state a "class of one" equal protection claim). Accordingly, the Court finds that at this stage, plaintiff has set forth facts which, if true, may support her claim that she was discriminated against because of her gender or national origin.

---

[4]Discrimination and retaliation claims brought under the NYSHRL, § 1981, and the Equal Protection Clause of the Fourteenth Amendment are subject to the same analysis as Title VII claims. *See Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997) ("claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII"); *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998) (the burden shifting framework of *McDonnell Douglas* applies to equal protection claims); *Philippeaux v. N. Cent. Bronx Hosp.*, 871 F.Supp. 640, 654 (S.D.N.Y. 1994) (section 1981 claims are evaluated in the same manner as a Title VII claim).

### E.      Retaliation Claims

To establish a prima facie case of retaliation under Title VII, a plaintiff must show:  "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (citation omitted).  At this stage, plaintiff need not establish a prima facie case, but must nonetheless "allege facts that state a plausible retaliation claim."  *Jackson v. N.Y. State Dep't of Labor*, 709 F.Supp.2d 218, 228 (S.D.N.Y. 2010).

### a.      November 2008

Plaintiff asserts in the amended complaint that in November 2008, defendants issued the insubordination charge and suspended her for five days in retaliation for her friendship and association with Officer Calverase, who had filed a charge of discrimination with the EEOC in July 2008.

The protected activity alleged in the amended complaint is plaintiff's friendship and association with her co-worker, Calverase, who filed an EEOC complaint in July 2008. Accepting this allegation as true and drawing all reasonable inferences in plaintiff's favor, the amended complaint could be construed as alleging that defendants viewed plaintiff's personal relationship with Calverase as an expression of support for Calverase, who had filed a formal hostile work environment complaint.  *See Sumner v U.S. Postal Serv.*, 889 F.2d 203, 209 (2d Cir. 1990) ("In addition to protecting the filing of formal charges of discrimination" Title VII protects "expressing support of co-workers who have filed formal charges.")

Plaintiff alleges that she suffered an adverse employment action when, four to five

months after Calverase filed her EEOC complaint, defendants charged her with insubordination and suspended her for five days.  *See e.g.*, *Senno v. Elmsford Union Free Sch. Dist.*, 812 F.Supp.2d 454, 474 (S.D.N.Y. 2011) (filing disciplinary charges against and suspending an employee constituted adverse action).  A plaintiff may establish a causal connection through an inference created by the temporal proximity between the protected activity and adverse action. *Monclova v. City of N.Y.*, No. CV-05-3164, 2008 WL 822117, at *7 (E.D.N.Y. Mar. 26, 2008). The Court finds, at this early point in the litigation, that the amended complaint states a plausible retaliation claim.

### b.      January 2009

On or about January 14, 2009, plaintiff moved to amend the complaint in a state court action to add retaliation and discrimination claims against the City of Syracuse and defendant Miguel.  According to the amended complaint in this case, upon learning of the proposed amendment, defendant Miguel complained to the Onondaga County District Attorney's Office that they "had not successfully prosecuted plaintiff or appealed the dismissal of Plaintiff's violation offense" and that as a result, the District Attorney's Office attempted to perfect the appeal.  An "adverse action" is any action "that a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations and citations omitted).  It is plausible that defendants' alleged urging of the district attorney to pursue an appeal of criminal charges against plaintiff, which had been dismissed, would dissuade a reasonable worker from making a charge of discrimination.  Further, a causal connection may be inferred given the temporal

proximity between plaintiff's motion to amend her state court complaint to add retaliation and discrimination claims.  Accordingly, defendants' motion to dismiss plaintiff's January 2009 retaliation claim is denied.

### c.     February 2012

Plaintiff alleges that the charge of insubordination and five-day suspension she received in February 2012 was baseless and "an extension of the retaliatory treatment Plaintiff has consistently received since first complaining of pornography in the workplace at the Syracuse Police Department in 2003."  Even assuming that the issue of pornography in the workplace is not precluded, plaintiff has failed to allege facts showing any plausible causal connection between her 2003 complaints and subsequent litigation of the claims which arose from those events and the February 2012 disciplinary action.  Accordingly, defendants' motion to dismiss plaintiff's retaliation claim in connection with the November 2012 disciplinary action is granted.[5]

### F.     First Amendment Claims

Plaintiff alleges that she:

> was retaliated against for exercising her First Amendment rights to free speech and association.  Plaintiff's complaints addressed widespread wrongdoing and unlawful conduct of members of the police force and thus concerned a matter of public interest.  Additionally, Plaintiff had a Constitutional right to associate with her friend and colleague, Kimberly Calverase and to support her in her complaints of discrimination.

---

[5]Although ¶ 63 of the proposed second amended complaint includes additional allegations in connection with the February 2012 disciplinary action, those allegations are irrelevant to the issue of retaliation.

22

Compl. ¶ 81.

The right to intimate association protects an individual's right to enter into an intimate relationship free from undue intrusion by the state. *Sanitation & Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985, 996 (2d Cir. 1997) (citing *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984)). To state an intimate association claim, the plaintiff must show that "the particular relationships at issue ... are generally protected ... under the circumstances alleged." *Patel v. Searles*, 305 F.3d 130, 136 (2d Cir. 2002). Here, the intimate relationship alleged by the plaintiff is her friendship with Calverase, which does not rise to the level of intimacy contemplated in this right. The right protects relationships that "attend the creation and sustenance of a family-marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." *Roberts*, 468 U.S. at 620. The Constitution does not recognize a generalized right of social association ( *see Sanitation & Recycling*, 107 F.3d at 996), and courts in the Second Circuit have not accepted intimate association claims based on friendships, however close. *See, e.g., Bates v. Bigger*, 192 F.Supp.2d 160, 170 (S.D.N.Y. 2002), aff'd, 56 Fed. Appx. 527 (2d Cir. 2002) (sexual relationship not protected)*; Berrios v. State Univ. of N.Y. at Stony Brook*, 518 F.Supp.2d 409, 418 (E.D.N.Y. 2007) ("Where, as here, the relationship sought to be protected falls outside the familial arena, it has been held to be not similarly protected."); *Dupont v. N.J. State Police*, No. 08 Civ. 10220, 2009 WL 2486052, at *9 (S.D.N.Y. Aug.14, 2009) (no clearly established law protected friendship as a form of intimate association). Accordingly, defendant's motion to dismiss plaintiff's First Amendment freedom of association claim is granted.

Plaintiff also alleges that her "complaints addressed widespread wrongdoing and

unlawful conduct of members of the police force and thus concerned a matter of public interest". Read broadly, the amended complaint could be construed to allege that plaintiff's attempt to amend the complaint in her state court action, to add discrimination and retaliation claims against her employer, constitutes protected First Amendment activity, and that defendants retaliated by  urging the district attorney to pursue the appeal of the dismissal of the criminal action against her.  These allegations assert a plausible First Amendment freedom of speech - retaliation claim.  Accordingly, defendant's motion to dismiss the freedom of association claim is granted and defendant's motion to dismiss the freedom of speech claim is denied.

### G.    Motion to Amend the Complaint

Plaintiffs move (Dkt. No. 28) to amend the complaint in order to add a claim that defendants violated plaintiff's Fourteenth Amendment right to procedural due process of law when they subjected her to disciplinary action in February 2012.  The proposed claim alleges that defendants suspended her without just cause and without disclosing the basis for the insubordination charge.

Pursuant to Rule 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[J]ustice does not so require", however, "if amendment would be futile." *Xiang Li v. Morrisville State College*, 434 Fed.Appx. 34, 35 (2d Cir. 2011).  Defendants oppose plaintiff's motion on the ground that amendment would be futile.

To establish a procedural due process claim, plaintiff must show: "(1) the private interest at stake; (2) the risk of an erroneous deprivation of that interest through the procedures used and the probable value (if any) of alternative procedures; (3) the government's interest, including the

possible burdens of alternative procedures." *O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  "[T]he Constitution mandates only that such process include, at a minimum, notice and the opportunity to respond." *O'Connor*, 426 F.3d at 198.

        The proposed amended complaint alleges that in February 2012, defendants suspended her without providing her with a reason for the disciplinary action.  Although the proposed amended complaint states that defendants gave plaintiff a "pre-disciplinary hearing" and "a letter . . . which identified the rules and regulations that she allegedly violated" they have "refused to disclose the basis of the charges".  In view of the allegation that defendants never disclosed the factual basis for the February 2012 insubordination charge and consequent suspension, the Court finds the proposed amended complaint alleges a plausible procedural due process claim. Accordingly, plaintiff's motion to file a second amended complaint is granted.

**V.     CONCLUSION**

        For the foregoing reasons, it is hereby

        **ORDERED** that defendants' motion to dismiss (Dkt. No. 25) the municipal liability and policymaker claims is **GRANTED**; and it is further

        **ORDERED** defendants' motion to give preclusive effect  (Dkt. No. 25) to the issues of the initiation of the criminal prosecution against plaintiff and pornography is GRANTED; and it is further

        **ORDERED** that defendants' motion to dismiss (Dkt. No. 25) plaintiff's February 2012 retaliation claim is **GRANTED**; and it is further

        **ORDERED** that defendants' motion to dismiss (Dkt. No. 25) plaintiff's First

Amendment freedom of association claim is **GRANTED**; and it is further

      **ORDERED** that defendants' motion to dismiss (Dkt. No. 25) is otherwise **DENIED**; and it is further

      **ORDERED** that plaintiff's motion to amend the complaint (Dkt. No. 28) is **GRANTED**; and it is further

      **ORDERED** that plaintiff shall file a second amended complaint in conformity with this Memorandum Decision and Order within thirty **(30) days** of the date of this decision.

      **IT IS SO ORDERED.**

      **DATED:**  March 27, 2013
                    Syracuse, New York

Honorable Norman A. Mordue
U.S. District Judge