UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SONIA DOTSON,

                      **Plaintiff,**

      v.                                                5:11-CV-620 (BKS/ATB)

**CITY OF SYRACUSE, et al.,**

                      **Defendants.**
_____

**<u>Appearances</u>:**

A.J. Bosman
Bosman Law Firm, L.L.C.
3000 McConnellsville Road
Blossvale, New York 13308
*For the Plaintiff*

Lindsey H. Hazelton
John T. McCann
Emily A. Middlebrook
Hancock, Estabrook Law Firm
100 Madison Street, Suite 1500
Syracuse, NY 13202
*For the Defendants*

**Hon. Brenda K. Sannes, United States District Court Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

      Plaintiff Sonia Dotson alleges that she was discriminated against on the basis of her

gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., 42

U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and New York

State Human Rights Law.[1] (*See* Dkt. No. 39). Plaintiff asserts that Defendants suspended her employment at the Syracuse Police Department ("SPD") for five days in November 2008, and that this disciplinary action was motivated by gender bias. Trial on this discrimination claim is scheduled to begin on December 9, 2019. (Dkt. No. 133).

Currently before the Court are the parties' motions in limine, which seek rulings on various issues before trial. (Dkt. Nos. 145, 146). The parties have filed responses (Dkt. Nos. 149, 150), and the Court heard argument on November 25, 2019. After careful consideration, the motions are granted in part and denied in part.

## II.    BACKGROUND

Plaintiff commenced this action on May 20, 2010, alleging a host of discrimination and retaliation claims against the SPD and related individual defendants. (Dkt. No. 1). On September 29, 2015, the Court (Mordue, S.J.) issued a Memorandum-Decision and Order granting Defendants' motion for summary judgment on all of Plaintiff's claims. (Dkt. No. 99). After Plaintiff appealed, the Second Circuit affirmed the Court's judgment in part, but also vacated another part and remanded for further proceedings. *See Dotson v. City of Syracuse*, 688 F. App'x 69 (2d Cir. 2017). Specifically, the Second Circuit found that, for Plaintiff's discrimination claim that she was disciplined in 2008 because of her gender, "the district court failed to consider Dotson's evidence as a whole when evaluating pretext, thus necessitating vacatur and remand for further consideration." *Id.* at 72.

Upon further consideration, the Court (Mordue, S.J.) again granted summary judgment, (Dkt. No. 122), and after Plaintiff appealed, the Second Circuit reversed and remanded for trial. In short, the Second Circuit concluded that "Defendants' sexist comments and behavior, when

---

[1] At the final pretrial conference, the Court dismissed Plaintiff's claim pursuant to the New York State Constitution (Count 9 of the Second Amended Complaint), based upon the stipulation of the parties.

viewed alongside Dotson's other evidence of discrimination, create a triable issue of fact as to whether Dotson's suspension was motivated in part by sex discrimination." *Dotson v. City of Syracuse*, 763 F. App'x 39, 45 (2d Cir. 2019). On April 4, 2019, the case was reassigned to the undersigned. (Dkt. No. 130).

## III. DISCUSSION

Defendants seek to preclude the following: 1) evidence on claims dismissed at summary judgment; 2) lay opinion testimony as to the SPD's alleged custom or policy of discrimination; 3) "me too" evidence from other employees unless they are similarly situated; 4) evidence in support of punitive damages; 5) evidence of unrelated damages and harm to Plaintiff; 6) evidence as to discrimination based on race or national origin; 7) evidence of Plaintiff's prior verdicts; and 8) claims for lost wages or anything beyond garden variety compensatory damages. (Dkt. No. 145). On the other hand, Plaintiff seeks to preclude: 1) argument that an Arbitrator's decision that awarded Plaintiff back pay for her suspension negates her claim in this case; 2) evidence of an "unlawfully obtained" telephone conversation between Plaintiff and her husband; 3) evidence as to the amount of the jury verdicts in Plaintiff's 2004 lawsuit against the SPD; and 4) evidence as to Plaintiff's disciplinary and litigation history. (Dkt. No. 146). Plaintiff also seeks: 5) a jury instruction that she is not at fault for the delay in bringing this case to trial; 6) permission to offer evidence as to the SPD's custom or policy of retaliating against employees who complain of discrimination; and 7) collateral estoppel effect for a 2004 federal court decision involving the SPD. (*Id.*). At the final pretrial conference, Defendants also made an oral motion to bifurcate the trial for the issues of liability and damages; Plaintiff opposes the request.

The Court will address each request in turn.

A.  **Defendants' Motions in Limine**

1) **Dismissed Claims**

Defendants seek to preclude evidence on claims dismissed at summary judgment. (Dkt. No. 145, p. 3) (Motion in Limine No. 1). Defendants contend that the Court should limit Plaintiff from expanding the scope of the trial beyond her single surviving claim—gender discrimination related to the 2008 suspension. (*Id.*). Specifically, Defendants seek to preclude evidence of dismissed claims "relating to national origin discrimination, pay inequities, retaliation, disparate assignments, promotional opportunities and benefits, pornography in the workplace, criminal prosecutions, EEO investigations and issues related to a hostile work environment." (*Id.*). Defendants note that Judge Mordue granted their motion to strike from the complaint allegations concerning pornography. *See Dotson v. City of Syracuse*, No. 11-CV-620, 2014 WL 526626 (N.D.N.Y. Feb. 7, 2014). Plaintiff indicates that she has "no intention of re-litigating her hostile work environment claims." (Dkt. No. 160, p. 4, n.1). But Plaintiff argues that she "should not be precluded from offering background or contextual evidence so as to fully inform the jury on the discriminatory action at issue." (*Id.*, p. 3).

As discussed above, the issue for trial is whether Plaintiff was subject to gender discrimination based on her 2008 suspension. Nonetheless, background evidence regarding gender discrimination by Defendants may be relevant to Plaintiff's claim. *See Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 150 (2d Cir. 2012) ("Evidence of an employer's general practice of discrimination may be highly relevant to an individual disparate treatment or to a disparate impact claim."); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89 (2d Cir. 2015) (finding that relevant background evidence may "provide a contextual basis for inferring discrimination").

For example, Plaintiff seeks to introduce testimony that male SPD employees watched pornography in the workplace without discipline, in order to show disparate treatment and "a culture of discrimination against females." (Dkt. No. 160, p. 4, n.1). The relevance of this sort of evidence depends on the degree of overlap with Plaintiff's claim, such as the same time period, the same Defendants, etc. Assuming there is a close connection, the background evidence may tend to show that Defendants acted with a discriminatory intent. For this reason, the Court has asked Plaintiff for a detailed proffer as to any particular background evidence.[2]

Accordingly, Defendants' Motion in Limine No. 1 is granted to the extent that Plaintiff is limited to presenting evidence relevant to her sole surviving claim for gender discrimination. The Court, however, reserves decision on the admissibility of any background evidence, until Plaintiff's proffer and Defendants' response. *See Morales v. New York State Dep't of Labor*, 530 F. App'x 13, 15 (2d Cir. 2013) (affirming the district court's exclusion of evidence related to a claim that "had already been dismissed at summary judgment").

### 2) Lay Opinion Testimony

Defendants seek to "preclude Plaintiff from presenting lay opinion testimony regarding the alleged policy and custom of the SPD in employment matters and from providing hearsay evidence or assertions otherwise unsupported by personal knowledge." (Dkt. No. 145, p. 4) (Motion in Limine No. 2). Specifically, Defendants anticipate that Plaintiff will attempt to offer evidence in the form of: (1) lay opinion regarding the custom, practice or habit of the

---

[2] Although Plaintiff's allegations regarding pornography were stricken from the Second Amended Complaint in an earlier decision in this case, the Court may modify that ruling to permit such evidence, to the extent that it is not offered in support of a separate claim, but only as background evidence or evidence of disparate treatment. *See In re United States*, 733 F.2d 10, 13 (2d Cir. 1984) ("It is well established that . . . rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment, and may be modified to the same extent if the case is reassigned to another judge.").

Police Department; or (2) hearsay and/or conjecture regarding purported facts that are based on the witnesses' opinion of what is 'common knowledge' within the City of Syracuse Police Department." (*Id.*). In response, Plaintiff asserts that she "has no intention of proffering witnesses who will opine on the ultimate legal issues in this case," and that "[e]ach witness is expected to testify as to their own observations and experiences." (Dkt. No. 160, pp. 4–5). Accordingly, Defendants' Motion in Limine No. 2 is denied as moot.

### 3) "Me Too" Evidence

Defendants seek to preclude Plaintiff from offering "'me too' evidence regarding or by other City employees who allege they have been discriminated against unless such individuals and their claims are similarly situated to Plaintiff's." (Dkt. No. 145, p. 5) (Motion in Limine No. 3). Defendants' concern is that "testimony from Plaintiff's other 'me too' witnesses regarding their own subjective belief that they too were discriminated against is not probative, and is certainly likely to create jury confusion, waste time, and create the potential for unfair prejudice." (*Id.*, p. 7). In opposition, Plaintiff argues that "[e]vidence of other female officers who were subjected to disparate treatment is directly relevant to the Defendants' motive, opportunity, intent, preparation, plan, knowledge, identity, and/or absence of mistake or accident in this action." (Dkt. No. 160, p. 5). Plaintiff adds that "any prejudice can be cured with a limiting instruction." (*Id.*, p. 9).

In general, a plaintiff alleging gender discrimination may sustain her burden through introduction of direct evidence, such as statements by the employer referencing gender, or "through proof of circumstances from which an inference of discrimination may be drawn." *Haskell v. Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984). Thus, a plaintiff may introduce evidence of disparate treatment, *i.e.* that employees of a different gender were treated more

6

favorably, or that employees of the same gender were also subject to discrimination. *Id.* The latter is sometimes called "me too" evidence.

The Supreme Court has recognized that the relevance of "me too" evidence "is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). Elaborating further, courts have identified a number of factors should be considered when determining the admissibility of "me too" evidence:

1) Whether the evidence is logically or reasonably tied to the decision made with respect to the plaintiff;

2) Whether the same 'bad actors' were involved in the 'other' conduct and in the challenged conduct;

3) Whether the other acts and the challenged conduct were in close temporal and geographic proximity;

4) Whether decision makers within the organization knew of the decisions of others;

5) Whether the other affected employees and the plaintiff were similarly situated; and

6) The nature of the employees' allegations.

*Schneider v. Regency Heights of Windham, LLC*, No. 14 Civ. 217, 2016 WL 7256675, at *12 (D. Conn. Dec. 15, 2016) (citation omitted). Moreover, courts retain discretion to exclude "me too" evidence pursuant to Rule 403, which also requires "a fact-intensive, context-specific inquiry." *Sprint/United Mgt. Co.*, 552 U.S. at 388.

Plaintiff indicates that "[t]he evidence at trial will show that female officers of the Syracuse Police Department (SPD) encountered similar forms of discrimination and the same actors (the individual Defendants) were involved." (Dkt. No. 160, p. 5). Plaintiff identifies several examples of alleged discrimination against other women who worked at the SPD. (*Id.*).

7

However, the Court lacks sufficient information to make a ruling as to this evidence. Thus, Plaintiff must make a detailed proffer as to any particular "me too" evidence, taking into account the factors identified above. Until such time, the Court reserves decision.

### 4) Punitive Damages

Defendants seek to preclude Plaintiff from offering testimony or evidence in support of punitive damages. (Dkt. No. 145, p. 8) (Motion in Limine No. 4). Defendants submit that "merely recommending an employee for discipline falls well short of the minimum threshold for outrageousness that would allow a reasonable juror to award punitive damages." (*Id.*). Plaintiff's Second Amended Complaint requests punitive damages on the basis that Defendants' actions "were done in a deliberate, callous, malicious, wanton and oppressive manner intended to injury Plaintiff." (Dkt. No. 39, ¶ 97).[3] Whether Plaintiff's proof will permit such a finding remains to be seen, and thus the issue of whether Plaintiff is entitled to punitive damages is premature at this point. *See Picciano v. McLoughlin*, 723 F. Supp. 2d 491, 506 (N.D.N.Y. 2010) ("Generally, the issue of whether to award punitive damages is an issue for the jury to decide based on an evaluation of the plaintiff's proof of 'sufficiently serious misconduct.'") (citations omitted). Accordingly, Defendants' Motion in Limine No. 4 is denied.

### 5) Unrelated Damages & Harm

Defendants seek to limit Plaintiff from "testifying to damages or emotional harm that are not directly related to her 2008 suspension." (Dkt. No. 145, p. 8) (Motion in Limine No. 5). In response, Plaintiff claims that her "emotional state had already been adversely impacted by prior discriminatory and retaliatory conduct of the SPD," and that the 2008 suspension "exacerbated and escalated pre-existing or previous emotional harm and injury." (Dkt. No 160, p. 10).

---

[3] Plaintiff recognizes that punitive damages are only available against the individual defendants under 42 U.S.C. § 1983. (Dkt. No. 160, p. 9).

Plaintiff suggests that "[i]f Defendants want to limit Plaintiff's evidence in this regard, then they should be precluded from cross-examining her or any of her witnesses regarding any harms associated with any other discriminatory or retaliatory actions Plaintiff has experienced in the course of her employment at SPD." (*Id.*).

It bears repeating that Plaintiff's only claim for trial is gender discrimination based on the 2008 suspension, and her claim for damages must necessarily focus on that adverse action. Nonetheless, both parties have indicated that Plaintiff's prior experiences are relevant to evaluating her damages in this case. The admissibility of such evidence will depend on the context at trial. Therefore, the Court reserves decision on Defendants' Motion in Limine No. 5.

### 6) Other Forms of Discrimination

Defendants seek to preclude Plaintiff from offering testimony or evidence regarding forms of discrimination other than her remaining gender discrimination claim. (Dkt. No. 145, p. 8) (Motion in Limine No. 6). In response, Plaintiff states that she "has no intention of advancing a claim of race or national origin discrimination." (Dkt. No. 160, p. 10). Accordingly, Defendants' Motion in Limine No. 6 is denied as moot.

### 7) Prior Verdicts

Defendants seek to preclude Plaintiff from presenting her prior verdicts against Defendants and any other verdicts against Defendants. (Dkt. No. 145, p. 9) (Defendants' Motion in Limine No. 7). In response, Plaintiff states that she "does not intend to introduce her prior verdicts against SPD unless Defendants open the door." (Dkt. No. 160, p. 11). Plaintiff adds that she does seek to use the verdict in a case brought by another plaintiff against the SPD, *Lee v. City of Syracuse, et al.*, 5:03-CV-1329 and 5:06-CV-949. The Court will address that case in a

separate section below. Accordingly, Defendants' Motion in Limine No. 7, regarding Plaintiff's prior verdicts, is denied as moot.

### 8) Limits on Damages

Defendants argue that Plaintiff should be precluded "from seeking anything other than garden variety compensatory damages." (Dkt. No. 145, p. 10) (Motion in Limine No. 8). In response, Plaintiff claims that her damages are more serious than "garden variety," and include emotional distress documented by a treating medical provider. (Dkt. No. 160, p. 11). For garden-variety emotional distress claims, "the evidence of mental suffering is generally limited to the testimony of the plaintiff," without support from "medical corroboration." *Olsen v. County of Nassau*, 615 F. Supp. 2d 35, 46 (E.D.N.Y. 2009) (citations omitted). More significant emotional distress claims typically involve "medical testimony and evidence," and testimony from corroborating witnesses. *Id.* At the final pretrial conference, Plaintiff proffered the evidence she seeks to introduce, without objection from the Defendants. Accordingly, Defendants' Motion in Limine No. 8 is denied as moot.

### B. Plaintiff's Motion in Limine

### 1) Arbitration Decision

Plaintiff argues that Defendants should be precluded "from arguing or suggesting to the jury that the arbitrator's backpay award negates Defendants' liability for the violation of Plaintiff's statutory and constitutional rights." (Dkt. No. 146-16, p. 5). In opposition, Defendants indicate that they seek to use the backpay award to show that: 1) Plaintiff did not suffer an adverse action for purpose of her discrimination claim; and 2) she did not suffer any economic loss for purposes of damages. (Dkt. No. 149, p. 2).

On this issue, the Court previously denied Defendants' request to file an additional motion for summary judgment, finding that "Defendants have not cited governing law supporting their position that the ultimate award of backpay in this case precludes, as a matter of law, a finding that Plaintiff suffered an adverse employment action when she was suspended without pay for one week." (Dkt. No. 136) (citing cases); (*see also* Dkt. No. 140). That ruling, however, does not preclude Defendants from pursuing the same argument at trial. In other words, while the Court could not decide the issue as a matter of law, a jury could find that Plaintiff's five-day suspension did not rise to the level of an adverse action because she later received backpay.

Plaintiff argues that a suspension without pay constitutes an adverse employment action even if the employee is later reimbursed, citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 71–72 (2006) and *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001). But those cases recognized that it was a question for the jury to decide. *See Burlington*, 548 U.S. at 73 ("Thus, the jury's conclusion that the 37–day suspension without pay was materially adverse was a reasonable one."); *Lovejoy-Wilson*, 263 F.3d at 224 (2d Cir. 2001) (finding that, where the plaintiff was suspended for one week but later reimbursed, the evidence "would be sufficient to support a jury's finding that she suffered an adverse employment action"). Accordingly, Plaintiff's request to preclude argument about the Arbitrator's backpay award is denied.[4]

### 2) Telephone Conversation

Plaintiff argues that Defendants should be precluded "from using the unlawfully obtained recorded telephone conversation between Plaintiff and her husband or any of its contents." (Dkt.

---

[4] The parties are encouraged to stipulate to the Arbitrator's determination and any relevant facts from the Arbitration decision.

No. 146-16, p. 7). In response, Defendants state that they are not planning to introduce the telephone conversation. (Dkt. No. 149, p. 3). Therefore, Plaintiff's request to preclude evidence of the telephone conversation is denied as moot.

### 3) Plaintiff's 2004 Lawsuit

Plaintiff argues that Defendants should be precluded "from mentioning or offering any evidence of the amount of the juries' awards in Plaintiff's 2004 lawsuit." (Dkt. No. 146-16, p. 15). Defendants initially took the position that "both the fact and amount of the jury verdict in *Dotson I* should be precluded, as should all references to that matter." (Dkt. No. 149, p. 4). However, the parties have since agreed that Plaintiff's prior experience is relevant to evaluating her damages in this case. The admissibility of such evidence will depend on the context at trial. Therefore, the Court reserves decision on Plaintiff's request.

### 4) Disciplinary & Litigation History

Plaintiff argues that Defendants should be precluded "from using Plaintiff's disciplinary and litigation history as irrelevant and unduly prejudicial." (Dkt. No. 146-16, p. 16). Defendants do not oppose this request, "with the understanding that Plaintiff Dotson will not introduce evidence concerning her termination or other disciplinary actions related to proceedings in regard to such claims." (Dkt. No. 149, p. 4). Defendants reserve the right to "challenge any claims by Plaintiff that her mental anguish relates solely to the 2008 suspension and damages sought therewith." (*Id.*). The Court has reserved decision as to the admissibility of evidence regarding Plaintiff's pre-existing or previous emotional harm, as discussed above. Therefore, Plaintiff's request is denied as moot, and the Court will rule on any further issue that arises at trial.

### 5) Jury Instruction About Delay

Plaintiff argues that the Court "should instruct the jury of the filing dates of Plaintiff's EEOC Complaint and instant lawsuit and affirmatively charge them at that she is not at fault for the delay in bringing this matter to trial." (Dkt. No. 146-16, p. 4). In response, Defendants offer to stipulate to the above filing dates but do not think any affirmative instruction is necessary. (Dkt. No. 149, p. 2). The parties were previously ordered to file a *joint* pre-trial stipulation, but Defendants state that Plaintiff failed to respond to their email inquiry regarding the pre-trial stipulation. (*See* Dkt. Nos. 133, 152). Plaintiff is directed to comply with the Trial Order by coordinating with Defendants to file a Joint Pretrial Stipulation on or before December 2, 2019. The parties may stipulate to the dates of the EEOC filing and the date of the federal complaint. The Court will instruct the jury that the delay in bringing this action to trial is not the fault of either party and that the jury is not to consider the delay in their deliberations. Plaintiff's request is thus granted to that extent.

### 6) *Lee* Decision

Plaintiff argues that Defendants "should be precluded, on the basis of collateral estoppel, from challenging the existence of an unlawful custom or policy of retaliating against employees who complain of discrimination." (Dkt. No. 146-16, p. 10). On this issue, Plaintiff seeks to offer evidence regarding another federal court action, *Lee v. City of Syracuse, et al.*, 5:03-CV-1329 and 5:06-CV-949. The plaintiff, a police officer with the SPD, commenced related cases against the SPD and other defendants, alleging among other things that they retaliated against her because of complaints she made of gender discrimination. *See generally* Dkt. No. 137 in 5:03-CV-1329. The two cases were consolidated and went to trial in 2010; a jury found that the

13

plaintiff was subject to retaliation, and further, that she was retaliated against "as a result of a custom or policy of retaliation" by the SPD. (Dkt. No. 146-1, p. 7).

But here, the Defendants assert that the finding in *Lee* as to an SPD custom or policy is irrelevant to Plaintiff's claim. (Dkt. No. 149, pp. 3–4). The Court finds that the *Lee* verdict is not admissible for several reasons. First, while the *Lee* verdict involved retaliation by SPD, Plaintiff's claim is limited to gender discrimination. Proof of actual discrimination is not necessary for a retaliation claim. The *Lee* verdict thus did not involve a jury finding that gender discrimination occurred at the SPD, but rather that the plaintiff was subject to retaliation for complaining about gender discrimination. In other words, Plaintiff cannot claim that her alleged discrimination is part of a proven custom or policy of such conduct.[5] Second, the *Lee* action involved related cases commenced in 2003 and 2006, with the alleged retaliation taking place before 2008—when Plaintiff was suspended in this case. Third, the *Lee* verdict did not implicate any of the same individual Defendants; indeed, the jury found that Defendant Heenan *did not* retaliate against the plaintiff. (Dkt. No. 146-1, pp. 3–5).

Plaintiff attempts to link her case with *Lee*, arguing that a policy of retaliation against those who report discrimination encourages discrimination, and that the proof at trial encompassed the time period relevant here. At the final pretrial conference, Plaintiff also argued that the *Lee* verdict is relevant because Defendant Miguel testified at his deposition in this case that he disagreed with the verdict and that the SPD did not do anything in response to it. Plaintiff suggests that this testimony shows a certain reckless disregard for her rights and thus bears on his intent to discriminate. But the Court finds that the connection between the *Lee*

---

[5] Plaintiff's municipal liability claim regarding an alleged custom or policy was dismissed earlier in the case. (*See* Dkt. No. 36, p. 25).

verdict and this case is speculative and tenuous at best.[6] And none of the cases cited by Plaintiff support the admissibility of this evidence.

The Court finds that any probative value of the *Lee* verdict is minimal and substantially outweighed by Rule 403 concerns. Notably, a jury might conflate and confuse the two actions, necessitating time to explain, among other things, the differences between discrimination and retaliation and the facts proven in *Lee* versus what is alleged here. Further, the inflammatory impact of the *Lee* verdict would pose a risk of unfair prejudice—introducing a very serious finding against the SPD and potentially "arous[ing] the jury's passions to a point where they would act irrationally in reaching a verdict." *United States v. Monsalvatge*, 850 F.3d 483, 495 (2d Cir. 2017) (citation omitted). For these reasons, Plaintiff's request is denied, and the *Lee* verdict shall not be admitted at trial.[7]

### 7) Evidence as to Custom/Policy

Similarly, Plaintiff seeks permission to offer "background evidence" as to the SPD's alleged custom or policy of retaliating against employees who complain of discrimination. (Dkt. No. 146-16, p. 8). In opposition, Defendants "object generally to Plaintiff's suggestion that evidence of a 'custom or policy' of anything is relevant to this case." (Dkt. No. 149, p. 3). Defendants further assert that "[t]his is not a retaliation case and evidence of protective activity is neither needed nor relevant." (*Id.*).

The Court will deny Plaintiff's request, for the reasons cited above regarding the *Lee* decision. Simply put, Plaintiff's proffered evidence of a policy or custom involving retaliation against employees who complain of discrimination bears little or no relevance to whether in fact

---

[6] To the extent Plaintiff is concerned that the *Lee* verdict is necessary to show why she did not complain about gender discrimination, Defendants have indicated that they have no intention to raise this argument.

[7] It follows that the Court need not decide whether the *Lee* verdict would be entitled to estoppel effect.

Plaintiff was subjected to gender discrimination when she was suspended for five days in 2008, and any probative value is substantially outweighed by Rule 403 concerns.

### C. Request to Bifurcate Trial

Lastly, Defendants made an oral request at the final pretrial conference to bifurcate the trial into separate phases for liability and damages. Pursuant to Rule 42, the Court "may order a separate trial of one or more separate issues . . . [f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Here, the Court finds that Defendants' request is untimely; the upcoming December trial date has been set since May 15, 2019. (Dkt. No. 133). Moreover, bifurcating trial at this late juncture would cause prejudice to Plaintiff and potentially delay resolution of this already-drawn out case. Accordingly, Defendants' request to bifurcate trial is denied. *See Katsaros v. Cody*, 744 F.2d 270, 278 (2d Cir. 1984) ("The decision to bifurcate a trial into liability and damages phases likewise is 'firmly within the discretion of the trial court under Fed. R. Civ. P. 42(b).'") (citing *In re Master Key Antitrust Litig.*, 528 F.2d 5, 14 (2d Cir. 1975)); *see also Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 380 (S.D.N.Y. 2005) ("Where evidence on liability and damages is intertwined, bifurcation is not appropriate.").

## IV. CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' Motion in Limine (Dkt. No. 145) is GRANTED in part and DENIED in part as set forth above**;** and it is further

**ORDERED** that Plaintiff's Motion in Limine (Dkt. No. 146) is GRANTED in part and DENIED in part as set forth above; and it is further

**ORDERED** that Defendants' oral motion to bifurcate trial is DENIED; and it is further

**ORDERED** that Plaintiff is directed to comply with the Trial Order by coordinating with Defendants to file a Joint Pretrial Stipulation <u>on or before December 2, 2019</u>; and it is further

**ORDERED** that Plaintiff is directed to submit a letter brief with a detailed proffer as to any background evidence or "me too" evidence <u>on or before December 2, 2019, and the Defendants may respond by December 6, 2019</u>; and it is further

**ORDERED** that the Clerk of the Court provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 27, 2019
Syracuse, New York

Brenda K. Sannes
U.S. District Judge